## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MAXWELL H. SCHRAMM and**
**ALEXANDRIA ZIEGLER SCHRAMM,**

        **Plaintiffs,**

**v.**                                    **Case No. 3:22-CV-161-NJR**

**THE PEREGRINE TRANSPORTATION**
**COMPANY, LLC, and**
**PAMELA J. KIDD,**

        **Defendants.**

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

This case arises out of injuries Plaintiff Maxwell Schramm sustained in an auto accident involving a tractor-trailer driven by Defendant Pamela Kidd, an employee of Defendant The Peregrine Transportation Company, LLC. ("Peregrine"). Now before the Court are four motions filed by Defendants, including a motion to exclude the opinions of Plaintiffs' experts Christopher Keel and John Wise, a motion for partial summary judgment, and a motion to bifurcate the trial.

For the reasons set forth below, the Motion to Exclude the Opinions of Christopher Keel (Doc. 86) is denied, the Motion to Exclude the Opinions of John Wise (Doc. 87) is granted in part and denied in part, the Motion for Partial Summary Judgment (Doc. 88) is granted in part and denied in part, and the Motion to Bifurcate the Trial (Doc. 118) is granted in part and denied as moot in part.

BACKGROUND

Just before 8 a.m. on July 5, 2021, Kidd was driving a tractor-trailer eastbound on Interstate 64 in St. Clair County, Illinois, when she experienced a bathroom emergency. (Doc. 96-2 at p. 4). Kidd carries a bucket and supplies in her truck for that purpose, so she pulled over on the shoulder of the interstate, just past an exit ramp, to relieve herself. (*Id.* at pp. 4-5). Kidd testified that she did not pull off the exit ramp of the highway because she knew there were no truck stops or truck-accessible facilities in that area. (*Id.* at p. 5). Kidd was stopped on the shoulder for approximately three minutes before she started to pull back onto the interstate. (Doc. 93-3 at p. 9).

At the same time, Schramm was driving a 2013 Ford Taurus eastbound on Interstate 64 with his 14-year-old son sleeping in the passenger seat. (Doc. 99-3 at pp. 12, 13). Traffic was very light that holiday morning, with only one other car behind Schramm. (Doc. 99-8 at p. 5). Schramm was driving in the right lane when he saw Kidd's tractor-trailer on the shoulder. (Doc. 99-3 at p. 14). Kidd also saw Schramm's vehicle approaching about 15 to 20 seconds behind her. (Doc. 96-2 at p. 6). Kidd then began to merge back onto the highway. (*Id.*). Schramm noticed either a blinker or flashers on the truck, and he checked his left mirror to see if he could get over to give the truck room. (*Id.*). He then turned his head to check his blind spot, and when he turned back toward the front of the car, all he saw was the truck directly in front of him. (*Id.*). He hit his brakes and tried to swerve, but it was too late—his vehicle collided with the back of the tractor-trailer. (*Id.*).

Schramm was airlifted from the accident scene to Saint Louis University Hospital and remembers nothing from the moment of impact until July 7, 2021. (*Id.* at p. 20;

Doc. 99-1). His son was taken to the hospital as a precaution. (Doc. 90-1 at p. 2). As a result of the accident, Schramm suffered multiple facial fractures, a broken jaw requiring metal plates, an eye injury from a chunk of glass that lodged in it, a broken ankle, a broken tailbone, and compression fractures in the middle of his back. (*Id.* at pp. 22-24). He also suffers from pain, depression, and anxiety from the accident. (*Id.* at pp. 9, 24).

> The narrative section of the Illinois Traffic Crash Report states, in relevant part:
>
> Unit one failed to reduce speed and struck rear end of the unit two's flatbed trailer. Unit one driver did not remember what happened at the time of the incident and was unable to provide any information. Unit one passenger was sleeping during the crash and was unable to provide any information leading up to the event. Unit two driver stated she [was] traveling approximately 55 MPH and observed unit one behind her. Unit two driver stated she noticed unit one not slowing down and struck the rear of the trailer. Witness one stated he observed unit one not slowing down and rear ending unit [two].

(Doc. 99-1). The report also notes that Schramm received a citation for violating "11-601(a)." (*Id.*). The speed limit on the interstate was 65 mph. (Doc. 90-2 at p. 3).

There was one witness to the incident, Charles Petty, who was driving about 200 feet behind Schramm in the right lane prior to the accident. (Doc. 99-8 at p. 4). He had been driving the same speed as Schramm and moved over to the middle lane when he saw the tractor-trailer's blinker turn on. (*Id.* at p. 3). Petty testified at his deposition that there was no way Kidd had been going 55 mph as stated in the Crash Report. (*Id.* at p. 6).

Kip Magruder, a mechanical engineer with Schaefer Engineering, Inc., prepared a Vehicular Accident Reconstruction Report on behalf of Defendants.[1] (Doc. 90-2). Data

---

[1] Defendants have moved for leave to properly support the facts within their Motion for Summary Judgment, as they initially did not authenticate Magruder's report or submit his testimony. (Doc. 101).

that Magruder retrieved from the Event Data Recorder ("EDR Data") of Schramm's vehicle showed that Schramm was traveling at 75 mph on cruise control at the time of the accident. (Doc. 90-2 at pp. 14-15). Schramm's vehicle was approximately 1,540 feet from the back of Kidd's truck when she began moving. (*Id.* at p. 3). Kidd's tractor crossed the fog line about 10.5 seconds prior to the collision, and the rear of the trailer crossed the fog line about 7.5 seconds prior to the collision. (*Id.*). Magruder determined Kidd was traveling approximately 19.2 mph at the point of collision. (Doc. 99-12 at p. 3).

Kidd testified that she expected Schramm to move over for her when she entered the highway. (Doc. 96-2 at p. 6). She felt that it was a safe maneuver for her to make, given the amount of time Schramm had to merge into the middle lane. (*Id.*). She stated that she believed merging onto the highway in front of Schramm was safer than waiting 15 or 20 seconds for him to pass. (*Id.* at p. 7). Kidd also testified that she did not tell law enforcement she was going 55 mph, and she does not know where that number came from. (*Id.* at p. 11). Instead, she estimated she was going more than 20 but less than 35 mph. (*Id.* at p. 12).

Kidd made several phone calls after the accident from her cell phone, including to Peregrine's safety supervisor, Katrina Thompson. (Doc. 100-4 at pp. 19-22). Both Thompson and Kidd saw the Crash Report that cited Schramm for violating section 11-601(a), and Thompson saw the dash cam video from Kidd's tractor. (*Id.* at p. 11; Doc. 100-

---

Pursuant to Federal Rule of Civil Procedure 56(e), if a party fails to properly support an assertion of fact, the Court may give the party an opportunity to do so. Thus, the Court **GRANTS** Defendants' motion (Doc. 101) and admits the Affidavit of Kip Magruder (Doc. 101-1) into evidence.

5 at pp. 9-10). Neither Thompson nor Kidd notified the St. Clair County State's Attorney or any investigating officer that the Crash Report was incorrect. (*Id.* at p. 10). They also did not supply a copy of the dash cam video to the State's Attorney or the officers. (*Id.*).

According to Kidd, she regularly expects people to move over for her, if possible, when she is merging onto the highway. (Doc. 96-2 at p. 12). As a general matter, Kidd does not know who has the right of way—a vehicle parked on the shoulder trying to get onto the highway or a vehicle already traveling on the highway. (*Id.* at pp. 9-10). She would not do anything differently if the same situation occurred today. (*Id.* at pp. 18-19). Thompson also testified that she does not believe Kidd's driving practices are improper. (Doc. 100-5 at p. 15). The traffic citation issued to Schramm was dismissed after Schramm's attorney presented the St. Clair County State's Attorney with Kidd's deposition testimony and the dash cam video from the truck. (Doc. 99-4).

Plaintiffs are now proceeding on the Amended Complaint. (Doc. 38). Count I alleges negligence against Defendants Kidd and Peregrine, Count II alleges negligent failure to train, monitor, and/or supervise against Peregrine, Count III alleges a loss of consortium claim by Alexandria Schramm, and Count IV is a claim for punitive damages against Peregrine. (*Id.*). Jurisdiction is proper in this Court under 28 U.S.C. § 1332, as Plaintiffs are citizens of Illinois, Defendants are citizens of Kentucky, and the amount in controversy exceeds $75,000, exclusive of interest and costs. (*See* Doc. 21).

## I.    Defendants' Motions to Exclude Expert Opinions

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell*

*Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Brown v. Burlington Northern Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014). The *Daubert* standard applies to all expert testimony, whether based on scientific competence or other specialized or technical expertise. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.137, 141 (1999)).

> Federal Rule of Evidence 702 provides that expert testimony is admissible if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under this rule, an expert witness may testify about a scientific issue in contention if the testimony is based on sufficient data and is the product of a reliable methodology correctly applied to the facts of the case. *Lyons v. United States*, No. 120-CV-01120-JMS-DLP, 2021 WL 3076482, at *1 (S.D. Ind. July 21, 2021) (citing *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010)).

The district court is the gatekeeper with respect to the screening of expert testimony in ensuring it is both relevant and sufficiently reliable. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). The district court "must engage in a three-step analysis before admitting expert testimony." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017). The Court must determine whether: (1) the witness is qualified; (2) the expert's methodology is scientifically reliable; and (3) the testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. *Id.*

The "key to the gate is not the ultimate correctness of the expert's conclusions.

Instead, it is the soundness and care with which the expert arrived at her opinion; the inquiry must 'focus . . . solely on principles and methodology, not on the conclusions they generate.'" *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (citing *Daubert*, 509 U.S. at 595). "So long as the principles and methodology reflect reliable scientific practice, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596).

Finally, an expert must explain the methodologies and principles that support his or her opinion; he or she cannot simply assert a "bottom line" or *ipse dixit* conclusion. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)). "[W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). The district court possesses "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (citing *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007)). "The critical inquiry is whether there is a connection between the data employed and the opinion offered." *Gopalratnam*, 877 F.3d at 781 (quotation omitted).

### A. Christopher Keel

Defendants move to exclude the opinions of Plaintiffs' cell phone forensics expert,

Christopher Keel, because he is unqualified. (Doc. 86). They do not contest the reliability or relevance of Keel's opinions.

In his report, Keel states that he performed a forensic examination of the data from Kidd's Motorola Z4 cell phone. (Doc. 86-1). Keel used MOBILedit software to download the data on Kidd's phone from July 5, 2021. (*Id.*). Despite Kidd's testimony that she made several calls after the accident, Keel was unable to locate any calls, texts, or web activity during or after the collision. (*Id.*). Keel opined that, to a reasonable degree of computer forensic expert certainty, Kidd did not save or store her cell phone activity for texts, calls, and web activity on July 5, 2021. (*Id.*). Furthermore, it appears that Kidd or someone else destroyed and deleted data from Kidd's cell phone prior to the forensic analysis. (*Id.*).

Defendants argue Keel lacks the necessary training, education, experience, skill, and/or knowledge in cell phone forensics to testify on the subject. (Doc. 86). As support, Defendants cite to a number of things, including Keel's failure to provide a curriculum vitae in accordance with Rule 26(a)(2)(B), the fact that he has not authored a book or publication on data recovery, his disabilities, his lack of degrees or certifications, and the fact that he has never given testimony as an expert witness before. (*Id.*).

Simply put, Defendants' criticisms of Keel are unfounded. As argued by Plaintiffs, Rule 26(a)(2)(B) does not require a curriculum vitae to be produced in litigation. Instead, it only requires that an expert's report contain his or her qualifications. Here, Keel stated that he is retired from the United States Army, where he was trained and worked in computer forensics. (Doc. 86-1). He then worked as a computer and camera technician for Johns Park Police Department, as a computer repair and data recovery technician for

Plug N Play Computer Repairs, and as an independent contractor for businesses and individuals. (*Id.*). He also has continued to assist friends and acquaintances with computer and cell phone forensic problems. (*Id.*).

In his deposition, Keel expanded on his training and experience. For instance, he testified that he went through cyber security, network development, and programming training in the Army. (Doc. 86-2 at p. 9). He learned how to write codes and programs, and he performed data extractions of 700 to 800 computers. (*Id.* at p. 10). While he did not extract data from cell phones, he testified that the program works in the same manner for both phones and computers. (*Id.*).

After leaving the Army, Keel had additional education and training at American InterContinental University (AIU), Kaplan University, and A&T University. He completed coursework toward a Bachelor of Science degree in computer science, cyber security, and network and graphic designs at AIU, and he will receive his degree when he pays off his financial aid. (Doc. 86-4 at pp. 6-7). Since then, Keel has performed between 12 and 20 computer data extractions and analyses while working for the Johns Park Police Department, eight or nine cell phone data extractions and analyses at Plug N Play Computers, and 25 cell phone data extractions and analyses for family and friends. (*Id.* at pp. 10-14).

While it appears Keel has not authored a publication and does not possess a degree due to the repayment of his financial aid, Rule 702 does not require either. Instead, the rule provides that a witness must be qualified as an expert "by knowledge, skill, experience, training, or education." FED. R. EVID. 702; *Sturgis v. R & L Carriers, Inc.*, 554 F.

Supp. 3d 976, 982 (N.D. Ind. 2021) ("An expert's qualifications can be developed in different ways, including through hands-on experience."). Keel has all of the above. He completed coursework toward a Bachelor of Science degree, he received training in the Army, and his career has focused on data extraction from computers and cell phones and analysis of that data.

Defendants also argue that Keel has never given testimony as an expert witness before, but they provide no analysis or case law explaining why this should disqualify Keel from testifying as an expert for the first time. And Defendants' mention of Keel's disabilities warrants no discussion whatsoever.

For these reasons, the Court finds by a preponderance of the evidence that Keel is qualified to opine as an expert on the extraction and analysis of cell phone data. Defendant's motion to exclude the opinions of Christoper Keel (Doc. 86) is therefore denied.

### B. John Wise

Defendants next move to exclude the opinions of Plaintiff's trucking safety expert, John Wise. (Doc. 87). Defendants argue Wise's report and testimony are not reliable under Rule 702 and *Daubert* and, thus, must be excluded.

In his report, Wise renders the following opinions:

- It is a violation of trucking safety to pull out in front of a vehicle and expect the vehicle to slow down or move over.

- Truck drivers are trained and expected to never pull into the path of an oncoming vehicle while expecting the vehicle to move or slow down for them.

- Schramm had the right of way.

- Kidd's actions on July 5, 2021, violated several Illinois statutes.

- The crash would not have occurred if Kidd had pulled over onto the exit ramp or gotten off at the next exit.

- Professional truckers are trained to never give false information to a police officer after a crash.

- The reason Kidd chose to pull her truck directly into the path of Schramm's vehicle is because her employer's pay system incentivizes her to arrive at her destination as soon as possible.

- Any competent trucking safety instructor would not allow a driver to pull out in front of another vehicle as that is a known dangerous and deadly action.

- Peregrine's safety supervisor, Katrina Thompson, was beyond negligent when she found no problem with Kidd's actions on July 5, 2021, and did not reprimand or admonish Kidd for the near fatal crash that she caused.

- Peregrine knew and knows that pulling out in front of another vehicle is dangerous and yet the company has done nothing to prevent further accidents.

- Peregrine ignored statistics regarding trucking crashes when it allowed its drivers to pull onto highways in front of other drivers, which is beyond mere negligence.

- Peregrine violated Illinois law when it failed to assist Schramm in having the criminal charges against him dropped.

- Kidd's actions were negligent at best, and Peregrine's actions and inaction were beyond negligence.

(Doc. 87-1).

    i.   *Qualifications*

Defendants argue that although Wise is an experienced truck driver, the opinions

expressed in his expert report go far beyond the knowledge he has gained through his career. Specifically, Defendants assert that Wise claims he reviewed items that "trucking safety trainers like myself typically use and rely on in their analyses of crashes." (Doc. 87-1 at p. 1). Yet, Wise admits he has never analyzed crashes and has no training, experience, or certifications in that field. Therefore, Defendants assert, Wise should not be permitted to provide an opinion on causation. Defendants also argue Wise cannot opine on the actions and/or inactions of Peregrine's safety supervisor, Katrina Thompson, because he has no training, experience, or certifications in that role.

Plaintiffs dispute Defendants' claim that Wise is unqualified to render these opinions. They argue that Wise has been a truck driver for 28 years, has served as a "training engineer" for Schneider National since 2017, and he received a Million Mile Safety Award in 2020, which means he traveled one million miles without an accident or injury. (Doc. 100-8 at pp. 8-10). He also received training through Schneider National to be a driver trainer, and he participates in safety education or training on a quarterly basis. (*Id.* at p. 10). In his deposition, Wise testified that, as a training engineer, he "trains new drivers in everything from logging, driving, coupling, uncoupling, backing, pretty well everything involved in trucking." (Doc. 100-8 at p. 10).

As truck driver with 28 years of experience and as a training engineer, Wise is qualified to opine on matters involving truck driver training and safety. *See Ashley v. Schneider Nat'l Carriers, Inc.*, No. 12-CV-8309, 2016 WL 3125056, at *7 (N.D. Ill. June 3, 2016) ("Generally speaking, the fact that Mr. Hess has more than 40 years of experience in truck driving, both as a driver and as an instructor, is sufficient to qualify him to testify

as an expert in this field."). Thus, the Court finds that Wise is qualified to render his opinions regarding trucking safety violations, driver training, and the actions or inactions of Peregrine's safety supervisor within the limitations explained below.

At the same time, however, "an expert is not entitled to offer opinions outside of his or her realm of expertise." *Id.* at *8 (citing *United States v. Pree*, 408 F.3d 855, 871 (7th Cir. 2005)). Wise admitted in his deposition that he has never been part of an accident review board, and he has never analyzed accidents to determine whether they were preventable. Thus, the Court finds that Wise is not qualified to provide an opinion that the crash would not have occurred if Kidd had pulled onto the exit ramp or gotten off at the next exit.

*ii. Reliability*

Defendants next attack the following opinions because they lack foundation and are not based in fact or principle: (1) Kidd's merge was improper; (2) truck drivers and motor carriers are trained not to give false information; (3) Peregrine's pay-by-the-mile policy is unsafe; and (4) Kidd's actions were unsafe.

1. <u>Improper Merge</u>

Defendants move to exclude Wise's opinion that Kidd's merge was improper because she should have stopped on the exit ramp nearby, waited for a truck stop, or waited for Schramm to pass. Defendants present four reasons for excluding the testimony. First, Wise contradicted his own testimony when he stated that merging by a commercial motor vehicle driver is acceptable if the oncoming vehicle has sufficient time to react to the merge. (Doc. 87-2 at pp. 14-17). Second, Wise did not conduct an

independent investigation into how many seconds Schramm was behind Kidd as she began to merge, and they fault Wise for not reviewing the data presented by their expert, Kip Magruder, even though Magruder was not even disclosed as an expert until after Wise's deposition. Third, Defendants point to Wise's testimony that he had no personal knowledge of whether parking was available at any nearby truck stop. And fourth, Wise testified that it is illegal park on the shoulder of an exit ramp unless one is experiencing an emergency, and he admitted Kidd could have been experiencing an emergency bathroom situation.

The Court finds that Wise's opinion about Kidd's merge is sufficiently based on his years of experience as a truck driver, his knowledge of trucking safety rules and regulations, and Kidd's testimony that Schramm was 15 to 20 seconds behind her when she began merging back onto the interstate. A full examination of Wise's testimony reveals that he did not contradict his own opinion, but rather he explained that a commercial motor vehicle driver may safely merge into oncoming traffic when an oncoming vehicle has sufficient time to react. Wise explained that, "[i]f it's unsafe you can't merge. That's the bottom line. You can't expect someone to get over just because you're entering the highway. That's not what merge means." (Doc. 99-13 at p. 16). Further, while Defendants fault Wise for not conducting an independent investigation into the timing of the incident, Wise would actually be *unqualified* to perform such an investigation—and Magruder's report was not available until well after Wise's deposition.

As for Wise's testimony that he does not know whether there was parking

available at any truck stop on July 5, 2021, that fact is irrelevant to Wise's opinion that Kidd should have *attempted* to stop at a truck stop. Wise also explained that, in his experience, at 8 a.m. on July 5 there should have been ample parking at any of the six locations within 31 miles of the accident that have space for trucks. (Doc. 99-13 at p. 28).

Finally, even though Wise testified that it is also illegal to park on the shoulder of a ramp, he explained that parking on the shoulder of a ramp is safer than the shoulder of the interstate. (*Id.* at p. 24).

For these reasons, the Court will not exclude Wise's opinions about Kidd's improper merge. Defendants, of course, may cross-examine Wise at trial about his experience and qualifications to render his opinions.

### 2. False Information to Police Officers

Defendants next seek to exclude Wise's opinion that he was "stunned to read the crash report that states that Ms. Kidd told the investigating police officer false information" and that "[p]rofessional truck drivers are trained to never give false information to a police officer after a crash." Wise also states that there is "no doubt that the information attributed to her in the crash report is incorrect and cannot be reconciled with the dashcam video." (Doc. 93-1). Wise does not indicate in his report what "false information" he is referring to, and he gave two different reasons for this opinion during his deposition. On direct examination, defense counsel asked Wise a leading question as to whether his opinion was based on Kidd's estimate that Schramm was "15 to 20 seconds" behind her. Wise answered "yeah," but that information was not part of the police report. (Doc. 99-13 at p. 21; Doc. 87-5 at p. 2). On cross-examination, Wise testified

that if Kidd told the officer she was going 50 mph at the time of the collision, that information would be false. (Doc. 99-13 at p. 28).

Regardless of what information Wise was referring to in his expert report, the Court finds that this opinion is not helpful to the jury. An expert "must testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury." *Ashley*, 2016 WL 3125056, at *8 (quoting *Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998)); *see also Florek v. Vill. of Mundelein, Ill.*, 649 F.3d 594, 602–03 (7th Cir. 2011) ("[W]hen the testimony is about a matter of everyday experience, expert testimony is less likely to be admissible."). The jury will be able to determine whether Kidd told false information to the police based on the facts presented at trial and their evaluation of Kidd's credibility. And it is common sense that a truck driver would never be trained to lie to a police officer. Because Wise's opinions on these issues will not assist the trier of fact in understanding the evidence or determining a fact in issue, they will be excluded.

### 3. Pay-by-the-Mile System

Defendants next move to exclude Wise's opinion that Peregrine's "pay-by-the-mile" system is an unsafe trucking practice because it incentivizes drivers to arrive at their destination as soon as possible. They note that Wise provides no support for how Kidd could have earned additional income in a pay-by-the-mile system when stopping on the shoulder only shortened her time, not the number of miles she drove. Defendants also assert that Wise's employer uses the same payment system, but according to Wise, his company is "very safe." Because these opinions are not based on any scientific facts,

literature, or independent investigation, it is not the type of information that would be helpful to the jury.

The Court disagrees with Defendants' summary of Wise's opinion. Wise does not opine in his report that Peregrine's payment system is generally unsafe. Instead, it is Wise's opinion that Kidd chose to pull her truck out in front of Schramm because she earns more money when she is on the road driving. He explained that the sooner Kidd reaches her destination, the sooner she can receive another load assignment and begin making money again. He also testified that even his own company's pay-by-the-mile system can be unsafe, as such a policy incentivizes drivers to drive faster and can contribute to a collision. (Doc. 99-13 at p. 28). The Court finds this opinion is supported by Wise's experience in the industry. To the extent Wise believes his company is safer than Peregrine, however, that opinion shall be excluded as unfounded and unhelpful to the jury.

### 4.  Dangerous Actions

Last, Defendants assert that Wise lacks foundation to opine that Peregrine knew and knows that Kidd's actions were dangerous and yet it has done nothing to prevent a similar accident from occurring. Wise presents evidence of the number of accidents involving large trucks between 1975 and 2019 and claims that Peregrine either ignored the data or failed to consider it when it permitted its drivers to pull onto highway in front of other motorists. In his deposition, however, Wise admitted that these statistics do not account for fault. (Doc. 99-13 at p. 24). Furthermore, Wise's opinion that Peregrine has ignored these statistics is not based on any facts or data, but rather is Wise's personal

opinion about Peregrine. This opinion will be excluded.

 iii. *Confusing the Jury*

 Defendants contend several of Wise's opinions will serve to confuse the jury because his testimony is inconsistent with his written report.

  1. <u>Expecting Vehicles to Merge</u>

 In his report, Wise states that it was a violation of trucking safety for Kidd to expect Schramm to slow down or move over to make room for her when she merged onto the interstate, and that is not what truckers are supposed to do when entering a highway from the shoulder or any other position. Wise further states that truck drivers are "trained and expected to never pull into the path of an oncoming vehicle expecting the oncoming vehicle to move over or slow down to avoid a crash." (Doc. 87-1 at p. 1). Defendants argue this opinion will confuse the jury because Wise testified in his deposition that, as a trucker, he assumes other motorists will react to his tractor-trailer's presence by slowing down or moving over. (Doc. 87-2 at pp. 16-17).

 The Court disagrees. As explained above, Wise's deposition testimony was nuanced and responsive to the hypotheticals he was being asked to consider. He explained what a safe merge is as opposed to pulling out from a stop on the shoulder and expecting oncoming traffic to slow down or move over. Defendants may cross-examine Wise regarding his expert opinion, but it is not so confusing or inconsistent as to be excluded.

  2. <u>Improper Use of the Shoulder</u>

 Next, Defendants move to exclude Wise's opinions that Kidd's use of the shoulder

to relieve herself was "inexplicable" and that she should have pulled onto the exit ramp if she were experiencing a bathroom emergency. Defendants note Wise's admission in his deposition that a driver can park on the shoulder in an emergency, the need to use the bathroom can become an emergency, and only Kidd knows whether her need to use the bathroom was an emergency.

Again, the Court does not find this testimony to be so confusing or inconsistent that it should be excluded. Wise's testimony is that parking along an interstate is not permitted unless the driver is experiencing an emergency—and even then, pulling onto the exit ramp would be safer than parking on the interstate shoulder. Whether Kidd was experiencing a health emergency such that she needed to stop on the interstate shoulder is a question of fact for the jury. If the jury determines that Kidd was not having an emergency, then Wise's testimony could be relevant and helpful to the jury's evaluation of Kidd's negligence. Thus, Wise's opinion will not be excluded.

### 3.   Violations of Illinois Law

Wise conceded in his deposition that he cannot say Kidd violated four of the seven Illinois statutes he cited, and he admitted his truck driving experience does not allow him to interpret Illinois law. Moreover, Wise's testimony that Kidd violated Illinois law is an impermissible legal conclusion and invades the province of the jury. *See Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) ("expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible"). Thus, the Court excludes Wise's opinion that Kidd violated numerous Illinois statutes.

iii.    *Invading the Province of the Jury and Helpfulness to the Trier of Fact*

Finally, Defendants seek exclusion of Wise's opinions that Kidd's actions were negligent, Thompson's inactions were beyond negligent, and Peregrine's actions and inactions were beyond negligent. The Court agrees these are impermissible legal conclusions and, thus, must be excluded. *See Good Shepherd Manor Found., Inc.*, 323 F.3d at 564; *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("When an expert offers an opinion relevant to applying a legal standard such as probable cause, the expert's role is limited to describing sound professional standards and identifying departures from them.") (quotation omitted).

The Court will also exclude Wise's opinion that Peregrine's failure to assist Schramm in getting the criminal charges against him dropped was a violation of Illinois law, that it was "bad trucking business practice as it gives trucking companies a bad name," and that it was morally and ethically reprehensible. Wise is unqualified to give an opinion regarding Peregrine's violation of Illinois law, and the remainder of his personal opinion is unhelpful to the jury. *See Florek*, 649 F.3d at 602–03.

In sum, the following opinions will be excluded as unreliable or unhelpful to the jury:

- Kidd's actions on July 5, 2021, violated several Illinois statutes.

- The crash would not have occurred if Kidd had pulled over onto the exit ramp or gotten off at the next exit.

- Professional truckers are trained to never give false information to a police officer after a crash.

- Peregrine ignored statistics regarding trucking crashes when it allowed its drivers to pull onto highways in front of other drivers.

- Peregrine violated Illinois law when it failed to assist Schramm in having the criminal charges against him dropped.

- Peregrine's safety supervisor, Katrina Thompson, was beyond negligent.

- Kidd's actions were negligent at best, and Peregrine's actions and inaction were beyond negligence.

## II.   Defendants' Motion for Partial Summary Judgment

Defendants next seek partial summary judgment on Plaintiffs' claim against Peregrine for punitive damages in Count IV of the Amended Complaint. (Doc. 88).

Summary judgment is proper if the movant shows that no material facts are in genuine dispute and the movant is entitled to judgment as a matter of law. *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (citing FED. R. CIV. P. 56(a)). In determining whether a genuine issue of fact exists, the Court views the evidence and draws all reasonable inferences in favor of the non-movant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See Anderson*, 477 U.S. at 255. In evaluating a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

In Count IV, Plaintiffs claim that Peregrine's actions and inactions were willful, wanton, and outrageous such that Plaintiffs are entitled to punitive damages. (Doc. 38).

Among other things, Plaintiffs assert Peregrine had a duty to properly train and monitor/supervise its drivers so they would operate tractor-trailers in a reasonably safe fashion and that Peregrine allowed Schramm to be charged with a crime that it was knew was unfounded. Defendants move for summary judgment on both of these bases, arguing there is no evidence Peregrine acted with fraud, actual malice, deliberate violence or oppression, or willfully or with such gross negligence as to indicate a wanton disregard for the rights of others, as is required for a punitive damages award.

"Punitive damages serve to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future." *Fogt v. 1-800-Pack-Rat, LLC*, 74 N.E.3d 186, 202 (Ill. App. Ct. 2017). Such damages are not awarded for ordinary negligence, such as mere inadvertence or mistake, but rather for conduct "involving some element of outrage similar to that usually found in crime. The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others." *Id.* (quoting *Loitz v. Remington Arms Co.*, 563 N.E.2d 397, 415-16 (Ill. 1990)).

"In determining whether to impose punitive damages, the trial court must first determine as a matter of law 'whether the cause of action in general and the facts of the particular case provide sufficient proof of aggravated circumstances to warrant submitting the issue to the trier of fact. If the facts of the case legally justify an award of punitive damages, the issue is then submitted to the trier of fact.'" *Abrams v. FedEx Ground Package Sys., Inc.*, 585 F. Supp. 3d 1131, 1145 (S.D. Ill. 2022) (quoting *Wolinsky v. Kadison*, 987 N.E.2d 971, 989 (Ill. App. Ct. 2013)).

i.    *Negligent Training/Supervision*

Defendants first move for summary judgment on Plaintiffs' punitive damages claim regarding Peregrine's negligent failure to train and/or supervise Kidd [2] Defendants' entire argument rests on the difference between the circumstances of this case and those in *Trotter v. v. B & W Cartage Co.*, No. 05-CV-0205-MJR, 2006 WL 1004882 (S.D. Ill. Apr. 13, 2006).

In *Trotter*, a truck driver was travelling on an interstate in Missouri, crossed over the median, and collided with the decedent's vehicle. *Id.* at *2. The court found there was "substantial evidence" that the driver was driving "well outside his federally-regulated hours of service, that he was operating a B & W tractor-trailer in a manner consistent with that of a person driving in a state of extreme fatigue, and that, in the weeks preceding Ryan Trotter's death, [the driver] repeatedly submitted faked logs of his driving hours to B & W." *Id.* at *5. The company's Director of Safety Rules Compliance testified that he was aware the time log scanning program had been inadequate to prevent hours of service violations for at least five years, but B & W's president took no corrective action. *Id.* at **5-6. The director also testified that he thought "money took precedent over safety." *Id.* at *7. The court found that a reasonable inference from this testimony was that B & W operated in conscious indifference to its regulatory duties. *Id.* at *7. Based on these facts, the court concluded that reasonable jurors could find punitive damages were warranted. *Id.*

---

[2] Defendants do not move for summary judgment on Count II, Plaintiffs' claim that Peregrine negligently failed to train or monitor/supervise Kidd, only on Plaintiffs' claim in Count IV for punitive damages.

Defendants argue that this case is unlike *Trotter* in that there is no substantial evidence that Peregrine willfully allowed Kidd and other drivers to merge directly into the path of other vehicles and illegally park on the shoulder of the interstate. Moreover, they argue, there is no evidence that Peregrine drivers were "repeatedly" committing such alleged acts and that Defendant Peregrine permitted, approved, and allowed their drivers to do so. Instead, the evidence is that Peregrine appropriately trains and supervises its drivers, given that Kidd conducted a 20- or 30-minute driving test before she was hired, she completed a two-week training on how to secure loads, and Peregrine holds safety meetings with its drivers.

In response, Plaintiffs point to Kidd's testimony that she expects cars to move over for her while merging on a daily basis, as well as the testimony of Katrina Thompson, Peregrine's safety supervisor. Thompson testified that Kidd did nothing wrong when she began pulling onto the highway with Schramm's vehicle 15 to 20 seconds behind her, and that it would not have been safer for Kidd to simply wait for Schramm to pass before beginning her maneuver. (Doc. 99-6 at p. 14). She further testified that Kidd was not admonished for the incident, nor was she told not to pull out in front of vehicles again. (*Id.*). Thompson, in fact, stated that she is fine with Peregrine truck drivers entering a highway lane with a car 15 to 20 seconds behind it because she expects drivers to move over to make room for the truck. (*Id.* at p. 15).

On the other hand, Plaintiffs' expert, John Wise, opined that drivers in a lane of traffic have the right of way, it is a violation of trucking safety to pull out in front of a vehicle and expect the vehicle to slow down or move over, and truck drivers are trained

and expected to never pull into the path of an oncoming vehicle.

The Court finds this case is not so unlike *Trotter* that punitive damages must be off the table. If a jury were to credit Wise's testimony, it could find that Peregrine—in condoning the maneuver performed by Kidd—acted willfully or with such gross negligence as to indicate a wanton disregard for the rights of others. Of course, Plaintiffs must first provide evidence establishing their claim for negligent training and/or supervision. If they do so, the Court finds there may also be sufficient evidence of aggravated circumstances to warrant submitting the issue of punitive damages to the jury. Therefore, Defendants' motion for summary judgment is denied on this basis.

ii.    *Failure to Provide Evidence to Law Enforcement*

Defendants also seek summary judgment on Plaintiffs' punitive damages claim related to Peregrine's failure to provide law enforcement with exculpatory evidence that would have exonerated Schramm. They argue they are entitled to judgment as a matter of law because: Peregrine had no duty to Schramm to provide the State with evidence; the dash camera footage is not "exculpatory evidence" that would have exonerated Schramm; and there is no evidence that Peregrine acted willfully or with such gross negligence as to indicate a wanton disregard for the rights of others.

Plaintiffs do not specifically address whether Peregrine had a duty to Schramm to provide the State with what they deem "exculpatory" evidence. But even if a duty existed, the Court finds that Plaintiffs have failed to provide evidence that Peregrine acted with an evil motive or with a reckless indifference to the rights of others. For example, there is no evidence that police requested information from Peregrine and

Defendants refused to turn it over. Nor is there evidence that Peregrine wanted Schramm to receive a citation so that Kidd would not receive one. Indeed, Thomson testified that even after reviewing the police report, she did not realize Schramm received a citation. (Doc. 90-6 at p. 8). Because Plaintiffs have not shown the intent necessary to submit the issue of punitive damages to a jury, Defendants' motion for summary judgment is granted on this claim.

### III.    Motion to Bifurcate Trial

Finally, Defendants have filed a motion to bifurcate the trial. (Doc. 118). They ask the Court to sever Plaintiffs' claim for punitive damages in Count IV, paragraph 13, into a separate trial with the same jury. Count IV paragraph 13 is Plaintiffs' claim related to Peregrine's alleged failure to provide law enforcement with exculpatory evidence that would have exonerated Schramm. Because the Court has determined that Defendants are entitled to summary judgment on this claim, Defendants' motion to bifurcate is moot on this point.

Defendants also ask, however, that the Court withhold evidence of Peregrine's financial condition and net worth unless and until enough evidence has been offered to create the possibility of a punitive damages award. Plaintiffs oppose the motion, asserting that a limiting instruction would resolve any concern about the jury's use of the evidence of Peregrine's net worth. Furthermore, Plaintiffs acknowledge they may not even present such testimony at trial.

Given Plaintiffs' concession that they may not even introduce evidence of Peregrine's net worth at trial, the Court agrees with Defendants that this evidence should

be withheld until Plaintiffs have made a showing that punitive damages may be awarded. Furthermore, evidence of Peregrine's net worth is not relevant to any other issue in the case. Defendants produced Peregrine's accountant, Meredith Hughes, for deposition solely to testify about Peregrine's gross profit, gross revenue, total assets, total income, and member income. This evidence can easily be withheld until Plaintiffs' have produced sufficient evidence to submit the issue of punitive damages to the jury. *See Challenge Aspen v. King World Prods. Corp.*, No. 00 C 6868, 2001 WL 1403001, at *3 (N.D. Ill. Nov. 9, 2001) (finding that a district judge "can control the timing of evidence offered so that no evidence of net worth is admitted unless and until the judge concludes that enough evidence has been offered to create the possibility of a punitive damages award"); *Burris v. Cullinan*, No. 09-3116, 2011 WL 3207132, at *3 (C.D. Ill. July 27, 2011) (barring evidence of net worth until the court concludes there is sufficient evidence offered to create the possibility of a punitive damages award).

For these reasons, Defendants' Motion to Bifurcate is granted in part and denied as moot in part. Evidence related to Peregrine's net worth shall be excluded until Plaintiffs produce sufficient evidence at trial to create the possibility of a punitive damages award.

## CONCLUSION

For these reasons, Defendants' Motion to Exclude the Opinions of Christopher Keel (Doc. 86) is **DENIED**, and their Motion to Exclude the Opinions of John Wise (Doc. 87) is **GRANTED in part and DENIED in part**.

Defendants' Motion for Leave to Properly Support Facts Within Statement of

Uncontroverted Facts (Doc. 101) is **GRANTED**. Defendants' Motion for Partial Summary Judgment (Doc. 88) is **GRANTED in part and DENIED in part**. Defendants are granted judgment as a matter of law on Plaintiffs' claim for punitive damages in Count IV related to Peregrine's failure to provide law enforcement with exculpatory evidence that would have exonerated Schramm.

Finally, Defendants' Motion to Bifurcate the Trial (Doc. 118) is **GRANTED in part and DENIED as moot in part**.

**IT IS SO ORDERED.**

**DATED:   May 13, 2024**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**