IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAXWELL H. SCHRAMM and ALEXANDRIA ZIEGLER SCHRAMM, <br><br> Plaintiffs, <br><br> v. <br><br> PEREGRINE TRANSPORTATION COMPANY, LLC, and PAMELA J. KIDD, <br><br> Defendants, <br><br>———————————————— <br><br> WENDLER & ZINZILIETA, P.C., <br><br> Intervenor. | Case No. 3:22-CV-161-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on the Motion to Disqualify Counsel filed by Plaintiff Maxwell Schramm. (Doc. 172). The motion is fully briefed, and the Court held a disqualification hearing on May 5, 2025. (Doc. 190). For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

This case began as a personal injury matter in the Circuit Court of St. Clair County, Illinois, the facts of which are well known to the parties and the Court. On July 5, 2021, Plaintiff Maxwell Schramm was severely and traumatically injured when his vehicle collided with the rear of a tractor-trailer driven by Defendant Pamela Kidd and owned by Defendant Peregrine Transportation Company, LLC. At the time of the accident,

Maxwell had been married to Alexandria Ziegler Schramm for approximately one year, although they had been together since 2017 and had two children together with a third child on the way. (Doc. 212 at pp. 92-93). The Schramms met with attorney Brian Wendler and signed a contract for his representation on July 22, 2021. (Doc. 207). Mr. Wendler filed a Complaint on behalf of Plaintiffs in the Circuit Court of St. Clair County, Illinois, alleging negligence against both Defendants on December 28, 2021. (Doc. 2-1). The Complaint also asserted a claim for loss of consortium on behalf of Alexandria. (*Id.*).

Defendants removed the case to federal court on January 26, 2022, on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 2). That same day, unbeknownst to this Court, Plaintiffs filed a Petition for Dissolution of Marriage in Williamson County, Illinois. Just one day later, Alexandria Ziegler Schramm filed a Petition for Order of Protection against Maxwell Schramm.

Mr. Wendler entered his appearance in this court on behalf of both Maxwell Schramm and Alexandria Ziegler Schramm on February 1, 2022. (Doc. 10). Mr. Wendler did not represent either party in the divorce action, although he did have a phone call with Plaintiffs' divorce attorneys on March 2, 2022, to discuss how the *ex parte* Order of Protection against Maxwell would hurt the personal injury case. (Doc. 212 at p. 38). The attorneys agreed to "void out" the protective order, but a plenary Order of Protection was entered against Maxwell anyway. (*Id.*).

As Plaintiffs' divorce case continued and became highly contentious, this case proceeded through nearly two years of extensive discovery and motion practice. Plaintiffs defeated Defendants' Motion for Summary Judgment, in part, and trial was set

for June 24, 2024. (Doc. 123). At the Final Pretrial Conference held on June 11, 2024, the parties indicated they were interested in a settlement conference with a magistrate judge, and the undersigned referred the case to Magistrate Judge Mark A. Beatty. (Doc. 140).

The case did not settle, but a new problem arose. After Magistrate Judge Beatty held the settlement conference on June 18, 2024—and just days before trial was set to begin—Maxwell Schramm terminated his attorney-client relationship with Mr. Wendler. On July 25, 2024, the undersigned held a telephonic status conference with Mr. Wendler, Maxwell Schramm's new attorney, Ed Hershewe, and defense counsel, where it surfaced that Mr. Wendler's continued representation of both Maxwell Schramm and Alexandria Ziegler Schramm may constitute a conflict of interest due to their ongoing divorce proceeding. (*See* Doc. 155). The undersigned permitted Mr. Wendler to withdraw as counsel for Maxwell Schramm and continued the trial setting to May 2025 to allow Mr. Hershewe time to prepare for trial. (*See* Doc. 168).

On February 10, 2025, as the parties were on the cusp of finalizing a settlement agreement, Maxwell Schramm filed a formal motion to disqualify Mr. Wendler who, at the time, was still representing Alexandria Ziegler Schramm. (Doc. 172). In his motion, Maxwell Schramm argued that disqualification was the appropriate remedy for Mr. Wendler's flagrant violation of the Rules of Professional Conduct in (1) concurrently representing Maxwell and Alexandria while they were also engaged in divorce proceedings; (2) continuing to represent Alexandria after withdrawing as counsel for Maxwell; and (3) serving an attorney's lien on the settlement proceeds while still representing Alexandria, which would prevent his client from obtaining those funds.

Shortly thereafter, Mr. Wendler filed an opposition to the motion to disqualify as well as a motion to withdraw as counsel for Alexandria Ziegler Schramm. (Docs. 175, 177). In his opposition to the motion to disqualify, Mr. Wendler acknowledged that the parties had reached a settlement agreement and that a conflict of interest "may *now* exist regarding how to divide the net proceeds, as the Plaintiffs are no longer financially aligned." (Doc. 177 at p. 2). But prior to the settlement, Mr. Wendler argued, the interests of both Maxwell and Alexandria were aligned: Alexandria's loss of consortium claim was completely derivative of Maxwell's claim, and both Plaintiffs testified that the accident led to their divorce.[1] (Doc. 212 at p. 88; Doc. 177-4 at p. 15). Mr. Wendler also argued that Maxwell Schramm waived the conflict argument by waiting seven months after terminating the attorney-client relationship to file the motion to disqualify, and that his assertion of an attorney's lien is not unethical.

At a disqualification hearing on May 5, 2025, the Court heard testimony from both Maxwell Schramm and Mr. Wendler. Maxwell Schramm testified that when he and Alexandria first met with Mr. Wendler, they were still married and had not separated. (Doc. 212 at pp. 49-50). But by October or November 2021, Maxwell testified, Mr. Wendler knew they were having marital issues and that Maxwell was looking for a divorce attorney. (*Id.* at p. 51). He told Mr. Wendler about the Order of Protection that was entered against him in January 2022 and that Alexandria was trying to take the kids away from

---

[1] Alexandria testified that she blamed the divorce "entirely" on the accident. (Doc. 177-4 at p. 15). Alexandria explained in her deposition that "Max's mental health really, really, really suffered," that mentally he "was an entire[ly] different person," and that he was "broken from head to toe," so much so that he was no longer able to care for their children or help around the house. (*Id.* at pp. 10-11, 15).

him. (Doc. 212 at p. 35). Maxwell Schramm also testified that Mr. Wendler knew there was continued animosity between Maxwell and Alexandria, and that Mr. Wendler asked them "a hundred times" whether they were going to be able to be peaceful and deal with each other in the same room. (*Id.* at pp. 43-44). According to Maxwell Schramm, he had concerns about Mr. Wendler representing both him and Alexandria "at the beginning, middle, and end. I asked several times if I needed to find somebody else or if he could continue to represent us." (*Id.* at p. 47). He admitted, however, that Mr. Wendler never told him he could not get a new attorney. (*Id.* at p. 83).

Mr. Wendler testified at the hearing, as an Intervenor, that he did not believe there was a conflict of interest until the division of settlement funds became an issue. (*Id.* at p. 97). Alexandria's loss of consortium claim in the lawsuit had always been completely derivative of Maxwell's negligence claims. (*Id.*). The evening before the settlement conference with Magistrate Judge Beatty, however, Maxwell insisted that Alexandria agree to only take a certain amount of the global settlement, which Alexandria would not do because she needed to consult with her divorce attorney. (*Id.* at p. 98-99). When Mr. Wendler explained the situation to Magistrate Judge Beatty, Judge Beatty noted that Mr. Wendler might have a conflict. (*Id.* at p. 99). Prior to that point, there had never been "a situation where Max insisted that Ali agree to a certain subset from a global settlement." (*Id.*). While he understood the serious allegations in the divorce case were "not good" for the personal injury case, he also knew that both Plaintiffs blamed the accident for their divorce and that Alexandria was not doing anything to undermine the personal injury action. (*Id.* at pp. 111-12, 127).

Mr. Wendler also testified that he did not ask Maxwell or Alexandria for informed consent or to sign a waiver regarding his dual representation of them because he "didn't think it was that big of an issue . . . because of the derivative nature of the case." (*Id.* at p. 126). He did, however, contact the Illinois State Bar Association (ISBA) to obtain an ethics advisory opinion after the Motion to Disqualify was filed. (*Id.* at p. 115-17). He was told that the ISBA no longer issues such opinions. (*Id.*).

The Court also heard from Alexandria's divorce attorney, Jay Schafer, who entered his appearance in this case on her behalf in light of Mr. Wendler's pending disqualification or withdrawal. Mr. Schafer explained that neither he nor his client believed that a conflict existed. (*Id.* at pp. 129-30). Upon questioning from Mr. Schafer, Mr. Wendler agreed that his role in the case was to maximize the size of the settlement. (*Id.* at p. 130). To that end, any testimony regarding Maxwell's traumatic brain injury, the effect it had on his personality and his mental status, and ultimately the effect it had on their marriage would increase the value of the case. (*Id.* at pp. 130-31). Finally, because the settlement was a marital asset, Mr. Wendler agreed that the divorce court "would have the ultimate say" regarding allocation of the settlement proceeds. (*Id.* at p. 134).

## LEGAL STANDARD

"[D]isqualification…is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). "A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing." *Id.*; *see also Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir.

2017) ("granting a motion for disqualification has immediate, severe, and often irreparable . . . consequences for the party and disqualified attorney"). For that reason, "such motions should be viewed with extreme caution for they can be misused as techniques of harassment." *Id.* at 722.

Courts in the Seventh Circuit apply a two-part test to disqualification motions. "The court must consider (1) whether an ethical violation has actually occurred, and (2) if disqualification is the appropriate remedy." *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997) (internal citations omitted). The burden is on the moving party to show facts necessitating disqualification. *Id.*

## Discussion

**A.    Disqualification Under Rule 1.7 and Rule 1.8(g)**

Maxwell Schramm alleges that Mr. Wendler violated Rule 1.7 of the Illinois Rules of Professional Conduct, which prohibits an attorney from representing a client if the representation involves a concurrent conflict of interest.[2] Rule 1.7 states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

---

[2] The Southern District of Illinois has adopted the Illinois Rules of Professional Conduct. SDIL-LR 83.2.

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent.

Ill. Sup. Ct. R. 1.7.

Maxwell Schramm argues that Mr. Wendler's representation of both Plaintiffs was barred under Rule 1.7(a)(1) and Rule 1.7(a)(2) because Maxwell's interests were "directly adverse" to Alexandria's interests, and joint representation created a serious risk that the divergent interests would "materially limit" the ability of the lawyer to advocate for both simultaneously. Maxwell argues that this conflict arose, at the very latest, once it became clear that he and Alexandria had divergent financial interests. Alternatively, Maxwell suggests Mr. Wendler should have been disqualified the moment the Plaintiffs filed for divorce.

To support his argument, Maxwell relies on Illinois State Bar Association Advisory Opinion No. 98-06 (Jan. 1999), where a lawyer was asked to represent a husband in an uncontested divorce and also file a petition for bankruptcy jointly on both the husband and wife's behalf. The ISBA noted that "since the parties are currently involved in a divorce, their interests in the bankruptcy proceeding are also likely to be so much in conflict, that consent after full disclosure would not likely be feasible." *Id.* As relevant here, the ISBA also stated that "[i]f, without a divorce on the horizon, both the husband and wife together initially come to see the lawyer to discuss the lawyer's joint

representation in the bankruptcy, and a conflict later develops, the confidential information the lawyer has obtained may prevent the lawyer from representing either party later if one party refuses to consent to the lawyer representing the other party." *Id.*

In this case, divorce was not on the horizon at the time the Schramms initially approached Mr. Wendler to obtain his representation. (Doc. 212 at p. 50). Maxwell testified that they had not separated, that Alexandria was supporting him and helping him, and that he "thought everything was okay." (*Id.*). Even after the divorce was filed, there was testimony that Maxwell and Alexandria attempted to mend the relationship on several occasions. (Doc. 212 at p. 43). There was also testimony at the evidentiary hearing and in depositions that the divorce was a direct result of the accident and Maxwell's injuries, both physical and mental. (Doc. 177-4 at p. 15).

As a result, the Court is not convinced that a concurrent conflict of interest existed solely because of the divorce filing. Mr. Wendler testified that his role was to maximize the size of settlement for both of his clients. (Doc. 212 at p. 130). That settlement amount would then be part of the marital estate to be allocated by the divorce court. (*Id.* at p. 133). In other words, for most of this litigation, the interests of both Maxwell and Alexandria were the same: to be awarded as much money as possible as a result of Defendants' negligence, whether through settlement or a jury trial.

That situation changed June 18, 2024, when Maxwell demanded that Alexandria agree to only take a certain amount of the global settlement. Mr. Wendler testified that Maxwell "made some derogatory comments about how he didn't want her to get anything" or wanted her to "agree to take some pittance." (*Id.* at p. 123). He also wanted

Alexandria to stipulate that the divorce court would accept the agreed-upon allocation and not try to change it. (*Id.* at p. 123-24). Alexandria refused to do so because she believed any settlement should be equitably divided pursuant to the terms of their divorce. At that point, Mr. Wendler knew or should have known that his clients' interests in this litigation were no longer aligned and that the representation of one's interest would be directly adverse to the other. Moreover, Mr. Wendler could not advocate for either Maxwell or Alexandria's interests without turning his back on the other client and their desired outcome. Accordingly, the Court finds that Mr. Wendler was disqualified pursuant to both Rule 1.7(a)(1) and Rule 1.7(a)(2) as of June 18, 2024.[3]

That is not to say that Mr. Wendler should not be paid for his work. When this case was initially filed, Maxwell had been issued a citation related to the accident that caused his injuries. Mr. Wendler had the citation dismissed, and he worked this case up through discovery and past dispositive motions. Ultimately, Mr. Wendler was able to secure a significant settlement offer from Defendants, what this Court will refer to as the "first settlement offer." Mr. Wendler is entitled to his fees for work completed up to that first settlement offer.

Unsurprisingly, there are very few cases with similar circumstances to support the Court's analysis here, although the Court finds *Osborne v. Vulcan Foundry, Inc.*, 699 So. 2d 492 (La. Ct. App. 1997), cited by Mr. Wendler, to be persuasive. There, a discharged

---

[3] If that were not enough, Mr. Wendler's continued representation of Alexandria after withdrawing as counsel for Maxwell on July 2, 2024, was certainly problematic. But because the Court finds that Mr. Wendler was already disqualified on June 18, 2024, the undersigned leaves that issue to the regulatory authorities.

attorney intervened in a personal injury action to protect his interest in his contingency fee. *Id.* at 493. The attorney had represented a married couple for seven years and had worked up most of their case before he was discharged by the husband. *Id.* at 495-97. The wife had filed for divorce while their lawsuit for the husband's personal injuries and her loss of consortium was pending. *Id.* at 497. The husband asked the attorney how the attorney could represent both him and his wife during their "pretty vicious divorce," and the attorney replied, "Don't worry about it, I can handle it." *Id.* The husband testified, however, that he still had questions about the attorney's trustworthiness due to his continued dual representation. *Id.* He ultimately dismissed the attorney because he did not want the attorney representing both him and his estranged wife. *Id.* at 496.

In *Osborne*, the attorney testified that he felt there was no conflict in representing both husband and wife because the wife's loss of consortium claim was dependent on the husband's claim. *Id.* at 496. The Louisiana appellate court examined Rule 1.7 of the Louisiana Rules of Professional Conduct, which is substantially similar to Rule 1.7 of the Illinois Rules. *Id.* at 496-97. The court found Rule 1.7 was not violated because the wife's loss of consortium claim was "interconnected" with the husband's claim and her recovery was "largely dependent" on the husband's successful recovery. *Id.* at 497. Therefore, the court found that the parties' interests were not adverse to each other. *Id.* And while the husband had just cause to discharge the attorney, the attorney was still entitled to the majority of his fee. *Id.*

Like in *Osborne*, the Court finds that there was no conflict in Mr. Wendler's representation of both Maxwell and Alexandria because the loss of consortium claim was

dependent on the negligence claims, up until the point that Maxwell demanded Alexandria agree to take next to nothing of the settlement amount.

Maxwell's citation to Rule 1.8(g) does not convince the Court otherwise. Rule 1.8(g) states:

> A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients…unless each client gives informed consent, in a writing signed by the client. The lawyer's disclosure shall include the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.

ILL. SUP. CT. R. 1.8(g). "An aggregate settlement occurs when an attorney, while representing two or more clients in a joined action, settles the entire action on behalf of all clients, without negotiating an individual, fact-specific settlement for each client." *Custer v. Cerro Flow Prods., Inc.*, 112 N.E.3d 151, 171 (Ill. App. Ct. 2018).

Maxwell argues that even though Mr. Wendler testified that his goal was to maximize the amount of settlement, he could not have participated in obtaining an aggregate settlement on behalf of both plaintiffs without their informed consent. Thus, he violated Rule 1.8(g). But Mr. Wendler was not even able to provide an aggregate settlement *demand* to Defendants because Plaintiffs would not agree on a number, much less "settle[] the entire action on behalf of all clients." *Custer*, 112 N.E.3d at 171. Therefore, he did not violate Rule 1.8(g).

As to the remainder of Maxwell's arguments, the Court acknowledges they raise serious questions. Nevertheless, the Court finds that Mr. Wendler's joint representation of Maxwell and Alexandria did not violate the Rules of Professional Conduct until June 18, 2024. As of that day, Mr. Wendler was disqualified from representing either Plaintiff.

Mr. Wendler is entitled to his attorney fee for work completed up to the first settlement offer.

**B.      Maxwell's Recordings**

In addition to the disqualification issue, the Court also must address the fact that Maxwell Schramm surreptitiously audio-recorded the settlement conference with Magistrate Judge Beatty on June 18, 2024. Maxwell admitted that he recorded the conference, held via Zoom, by placing an audio recorder off to the side of the screen. (Doc. 212 at p. 78). He did not obtain any participant's permission before doing so. (*Id.*).

By recording Magistrate Judge Beatty without his consent, Maxwell Schramm violated Illinois state law. It is illegal in Illinois to use an "eavesdropping device in a surreptitious manner to record any part of a private conversation to which the person is a party, unless they have the consent of all other parties to the private conversation." 720 ILCS 5/14-2(a)(2). The penalty for recording a judge is a Class 3 felony. 720 ILCS 5/14-4 ("The eavesdropping of an oral conversation . . . of any . . . judge, while in the performance of his or her official duties, if not authorized by this Article or proper court order, is a Class 3 felony, and for a second or subsequent offense, is a Class 2 felony."). Schramm also violated this Court's Local Rule 83.5(a), which prohibits the taking of sound recordings in connection with any judicial proceeding. SDIL-LR 83.5(a).

The Supreme Court has held that a district court has the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). Maxwell Schramm certainly abused the process here by recording a federal Magistrate Judge without his knowledge or

consent. While the Court declines to issue sanctions at this time, Maxwell Schramm is warned that further surreptitious recordings of any judicial officer will be reported to the appropriate authorities and sanctions will be imposed.

## Conclusion

As the undersigned stated at the evidentiary hearing, "[I]t would be a great understatement to say this case is a mess." The name-calling and axe-throwing by the Plaintiffs' attorneys involved in this case has been disheartening to say the least. Thankfully, as Plaintiff Maxwell Schramm noted in his response to Alexandria Schramm's motion to remand, the "equitable distribution of property, including determinations regarding whether personal-injury awards are marital property and how they should be divided pursuant to Illinois family-law statutes, are questions for the state court." (Doc. 187 at p. 7).

Because this case has settled, there is nothing more for this Court to decide. The settlement funds, which have been deposited into the trust account of Attorney Jay Schafer, shall be allocated by the divorce court according to Illinois law. Thus, the Motion to Remand this case filed by Plaintiff Alexandria Ziegler Schramm (Doc. 183) is **DENIED**. Counsel shall immediately notify the judge presiding in the divorce case, if they have not already done so, that the personal injury case has settled, and that the funds are in Mr. Schafer's trust account.

The Motion to Disqualify Attorney Brian Wendler (Doc. 172) is **GRANTED in part and DENIED in part**. The Court finds that Mr. Wendler was disqualified from representing either Plaintiff as of June 18, 2024. However, Mr. Wendler is entitled to his

attorney's fee, which shall be his contractually agreed percentage of the first settlement offer made by Defendants. Attorney Hershewe may also petition the divorce court for an appropriate *quantum meruit* fee.

The Motion to Withdraw as Attorney (Doc. 175), Motion to Strike Response to Motion to Remand (Doc. 188), and Motion for Clarification and/or to Strike Hershewe's Ex Parte Submission to the Court (Doc. 192) filed by Mr. Wendler are **DENIED as moot**.

**IT IS SO ORDERED.**

DATED:   July 17, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**